**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Michael Ray Fuqua,

    Petitioner,

v.

Ryan Thornell,

    Respondent.

No. CV-23-08621-PCT-KML

**ORDER**

Petitioner Michael Ray Fuqua was convicted in state court of conspiracy to commit first-degree murder and sentenced to life imprisonment without the possibility of release for 25 years. In his federal habeas corpus petition, Fuqua claims he received ineffective assistance of trial and appellate counsel. (Doc. 1.) Magistrate Judge James F. Metcalf issued a Report and Recommendation ("R&R") recommending the court reject Fuqua's claims. (Doc. 15.) Fuqua filed objections to which respondent responded. (Doc. 16, 17.) Based on a de novo review of the objected-to portions of the R&R (and other portions), Fuqua is not entitled to relief.

**I. Background**

Neither party objects to the R&R's recitation of the factual background and it is adopted. In brief, Fuqua and G.H. were cellmates while Fuqua was awaiting trial on drug and weapons charges. Fuqua asked G.H. to murder a confidential informant who had provided evidence related to Fuqua's pending charges. G.H. contacted his counsel and the police about Fuqua's request. G.H. recorded a later conversation with Fuqua where Fuqua

discussed the murder. Fuqua provided G.H. with the confidential informant's contact information and drew a map to show G.H. how to get to that person's home and work. Based on his conversations with G.H., Fuqua was indicted on one count of conspiracy to commit first-degree murder. Represented by an attorney, Fuqua proceeded to a jury trial where G.H. testified pursuant to a cooperation agreement. Fuqua was convicted.

The result of Fuqua's first trial was reversed on appeal based on the trial court's wrongful exclusion of evidence. On remand, G.H. indicated he would not testify at the second trial. During proceedings leading up to the second trial, Fuqua believes the prosecutor inappropriately indicated to G.H. that G.H. would not suffer any consequences should he refuse to testify again. But throughout the pretrial proceedings before the second trial G.H. remained adamant he would not testify, and he did not do so during the second trial. Fuqua was represented by counsel at the second trial and that trial ended in a hung jury. Fuqua then proceeded to a third trial at which he opted to represent himself. Again G.H. refused to testify but his testimony from the first trial was read into the record. Fuqua was convicted at the third trial, and that conviction is now at issue.

Fuqua obtained counsel for his direct appeal after the third trial. That counsel presented three arguments: 1) the court erred in admitting G.H.'s testimony because the transcripts had not been properly certified; 2) the trial judge erred in denying a motion to recuse; and 3) admission of G.H.'s testimony violated Fuqua's rights under the Confrontation Clause. The Arizona Court of Appeals rejected these arguments and affirmed. The Arizona Supreme Court denied review. Fuqua then proceeded with post-conviction relief proceedings in state court. Those proceedings are not relevant here except that respondents do not now argue Fuqua failed to exhaust any of his current arguments in them.

Fuqua's federal petition contains three overarching claims, broken down into varying numbers (as to one claim, more than twenty) of distinct incidents allegedly supporting them. In general, the first claim is that Fuqua's appellate counsel (after his third trial and conviction) was ineffective because that counsel failed to raise "claims that were

far stronger than the invalid and/or undeveloped claims raised." (Doc. 1 at 3.) The second claim is that Fuqua's multiple trial attorneys (*i.e.*, during his first and second trials) were ineffective based on—among other things—failing to object to certain testimony, failing to impeach G.H., and providing incorrect advice regarding a plea offer. And the third claim is another claim for ineffective assistance of trial counsel (again during the first and second trials), but this claim is based on counsel misadvising Fuqua regarding his eligibility for parole. The R&R interprets Fuqua's petition as presenting almost thirty unique claims and exhaustively analyzes them. (Doc. 15 at 7.)

**II. Standard of Review**

A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b). The district court must review de novo the portions to which an objection is made. *Id.* But "[o]nly objections that reference specific portions of the report and recommendation will trigger de novo review—general or conclusory objections do not suffice." *Ali v. Grounds*, 236 F. Supp. 3d 1241, 1249 (S.D. Cal. 2017). The court is not required to review those portions to which no proper objection is made. *See Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) ("[D]e novo review of factual and legal issues is required if objections are made, but not otherwise.") (quotation marks and citation omitted). And even when a specific objection is made, the court must conduct a de novo review but need not "provide individualized analysis of each objection." *United States v. Ramos*, 65 F.4th 427, 434 (9th Cir. 2023).

Fuqua's objections begin by noting the length of the R&R and the presumptive page limit for objections meant it was "impossible as a practical matter for Fuqua to address all [of his] specific objections." (Doc. 16 at 2 n.1.) The specific objections Fuqua set forth were "not intended to be exhaustive" and he purported to "reserve[] his right to object to all aspects of the [R&R]." (Doc. 16 at 2 n.1.) To the extent he believed it necessary, Fuqua should have sought an extension of the page limit to present his objections. Having chosen not to do so, Fuqua cannot require de novo review of every aspect of the R&R simply by

claiming page limits prevented more complete arguments.

Given the length of the R&R and in an abundance of caution, the court has conducted de novo review of those discrete portions of the R&R to which Fuqua made specific and proper objections, but the court has also reviewed de novo all critical aspects of the R&R's conclusions.

**III. Merits of the Claims**

Fuqua's first two claims are subject to the standard of review imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The deferential standard mandated by AEDPA means "[t]he question is not whether a federal court believes the state court's determination" rejecting Fuqua's claims "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). For Fuqua to prevail, the state court's rejection of his claims must have been "so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (simplified).

As for Fuqua's third claim, respondents concede this claim is not "entitled to deference" under AEDPA. (Doc. 17 at 10.) The claim is therefore subject to de novo review.

**A. Ineffective Assistance of Appellate Counsel**

Fuqua's first claim is that his appellate counsel was ineffective when selecting which arguments to make on appeal and which arguments to forgo. This claim requires Fuqua "show that appellate counsel's representation fell below an objective standard of reasonableness, and that, but for counsel's errors, a reasonable probability exists that he would have prevailed on appeal." *Hurles v. Ryan*, 752 F.3d 768, 785 (9th Cir. 2014). The first prong of this analysis does not require counsel "raise every nonfrivolous argument on appeal." *Davila v. Davis*, 582 U.S. 521, 533 (2017). Rather, appellate counsel must raise "only those arguments most likely to succeed." *Id.* So "[d]eclining to raise a claim on appeal . . . is not deficient performance unless that claim was plainly stronger than those

actually presented to the appellate court." *Id.*; *see also Smith v. Stewart*, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (filing "kitchen-sink briefs . . . is not necessary, and is not even particularly good appellate advocacy").

Only the state trial court provided reasoning for rejecting this claim so that court's ruling is what must be evaluated. *Wilson v. Sellers*, 584 U.S. 122, 125 (2018) ("federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale"). The state trial court held Fuqua had "failed to show that the issues not raised on appeal were 'clearly stronger' than the issues actually raised on appeal." (Doc. 9-25 at 20.) Based on the lack of such a showing, the court held Fuqua had failed "to satisfy the 1st prong of the ineffective assistance of appellate counsel test." (Doc. 9-25 at 20.) Under the deferential AEDPA standard, the question now is whether that conclusion was objectively unreasonable in light of the comparative strength of the claims raised by Fuqua's appellate counsel and the claims Fuqua believes should have been raised. It was not.

The R&R begins by assessing the merits of the arguments Fuqua's appellate counsel pursued before assessing the merits of the seven arguments Fuqua alleges his counsel should have pursued. (Doc. 15 at 7-8.) Of the three claims Fuqua's counsel pursued, the R&R concludes the first (uncertified transcripts) and third (confrontation of G.H.) "had substantial merit." (Doc. 15 at 23.) The R&R then analyzes the arguments Fuqua believes his counsel should have pursued and concludes each of those claims was weaker than those raised. Fuqua objects to both the analysis of the strength of the claims his counsel pursued and to the strength of the claims his counsel failed to pursue.

The claims regarding uncertified transcripts and violation of Fuqua's confrontation rights had merit while the claims Fuqua believes his counsel should have pursued had significant flaws. Fuqua's objections understate the strength of the arguments appellate counsel did make—particularly the argument regarding Fuqua's confrontation clause rights as to G.H.'s testimony, which is closely related to but cast slightly differently from several arguments Fuqua believes counsel should have made—while ignoring the flaws in

his desired arguments. For example, the R&R rejects as weak Fuqua's claim his counsel should have argued the prosecutor interfered with Fuqua's ability to present a complete defense by "effectively" instructing G.H. not to testify at the retrial. (Doc. 15 at 23.) But the R&R notes the prosecutor interpreted G.H. as having satisfied his agreement well before it became clear a retrial would be necessary and Fuqua offered nothing to suggest that interpretation was pretextual or unreasonable. (Doc. 15 at 33.) And according to the R&R, even before the prosecutor allegedly interfered with G.H.'s testimony, "G.H. had made clear that he did not wish to testify because of past prison violence and his fears it would be repeated if he testified." (Doc. 15 at 39.) Based on G.H.'s statements, the R&R concludes there is no evidence "G.H.'s decision to not testify resulted from the prosecution's statements." (Doc. 15 at 39.) Fuqua's objections do not address this point, essentially conceding that any statements by the prosecutor were not the reason for G.H.'s refusal to testify. (Doc. 16 at 3-4.)

Fuqua's objections fail to challenge the R&R's conclusion that many of his desired arguments were not preserved and appellate counsel would have therefore faced the added obstacle of showing fundamental error. For example, the record supports the R&R's conclusion that Fuqua failed to make the specific record necessary for appellate counsel to credibly argue a denial of meaningful access to the court after Fuqua chose to represent himself. (*See* Doc. 15 at 98-104.) Fuqua objections do not meaningfully challenge the R&R's analysis of this claim, nor the conclusion that fundamental error review would further weaken it. (*See* Doc. 16 at 8.) This is just one example of Fuqua misunderstanding why his possible claims would be weaker on appeal than the ones counsel actually raised.

Fuqua's objections to the R&R's analysis of each of the remaining subparts of this claim suffer from similar flaws. Crucially, AEDPA's standard of review does not allow this court to assess the strength and weaknesses of each subpart in the first instance. Rather, the court must determine whether no fairminded jurist would have reached the same conclusion as the state court. Fuqua's objections to the R&R present colorable arguments regarding the merits of various arguments but Fuqua has not shown his proposed arguments

were plainly stronger than the claims argued. The R&R's analysis of Fuqua's first claim is adopted.

### B. Ineffective Assistance of Trial Counsel

The R&R analyzed Fuqua's ineffective assistance of trial counsel claim as presenting seven bases, some of which consist of multiple subparts. (Doc. 15 at 8-9.) Fuqua presents only conclusory objections to much of the R&R's analysis. (Doc. 16 at 9.) But even reviewing the crucial conclusions of the R&R de novo, it is correct.

As with the earlier analysis, even Fuqua's most specific objections do not address dispositive aspects of the R&R's analysis. For example, the R&R analyzes a claim that Fuqua received ineffective assistance of counsel regarding a plea offer when his counsel failed "to correct . . . misstatements by the court and prosecution about [an] unrequired element" to find Fuqua guilty. (Doc. 15 at 142.) The R&R rejects this claim based in part on Fuqua's inability to show that if his counsel had behaved differently, Fuqua would have accepted a plea. (Doc. 15 at 143.) Fuqua's objections do not address this point and, even upon de novo review, the R&R correctly concludes the record shows Fuqua would not have acted any differently had his counsel corrected misstatements. (Doc. 15 at 144.) Fuqua's objections are overruled and the R&R's analysis of the ineffective assistance of trial counsel is adopted.

### C. Ineffective Assistance of Trial Counsel Regarding Parole Eligibility

Fuqua's final claim is another type of ineffective assistance of counsel involving his trial counsel. According to Fuqua, his counsel misadvised him that he was exposed to a sentence of life with the possibility of parole after 25 years. (Doc. 15 at 154.) That advice was incorrect: Arizona abolished parole long before Fuqua's trial. The R&R concludes there was widespread confusion in the Arizona legal community about the availability of parole such that the incorrect advice provided by Fuqua's counsel was not below professional norms. But the R&R also states Fuqua received a sentence where he is eligible for parole after 25 years, so any incorrect advice was not prejudicial. Fuqua objects to the R&R's reasoning regarding professional norms but does not address how Fuqua was

- 7 -

prejudiced. And given that Fuqua is parole eligible, he suffered no cognizable prejudice. Fuqua's objections are overruled and the R&R's analysis of this claim is adopted.

**IV. Certificate of Appealability**

The R&R recommends the denial of a certificate of appealability, and Fuqua provides only a summary objection to that recommendation. (Doc. 16 at 11.) When deciding whether to grant a certificate of appealability "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 580 U.S. 100, 115 (2017) (simplified). Based on the deference that must be accorded the state court's resolution of Fuqua's first two claims and the lack of merit of his third claim, a certificate of appealability is not merited.

Accordingly,

**IT IS ORDERED** the Report and Recommendation (Doc. 15) is **ADOPTED**. The petition for writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE**. The Clerk of Court shall enter judgment and close this case.

**IT IS FURTHER ORDERED** a certificate of appealability is **DENIED** because petitioner has not made a substantial showing of the denial of a constitutional right.

Dated this 7th day of July, 2025.

Honorable Krissa M. Lanham
United States District Judge